UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. JFM 14-CV-2312 |
| Plaintiff, | |
| v. | |
| Midway Industries Limited Liability Company, *et al.* | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO BANK OF AMERICA'S MOTION TO INTERVENE**

Bank of America, N.A. ("BOA") has moved to intervene in this civil law enforcement action, asserting that it is a secured creditor of the Defendants.  The purposes of BOA's motion, however, do not justify intervention.  In essence, BOA has two goals.  First, in the short term, it seeks reconsideration of the Court's Orders that the Receiver and his counsel and professionals be compensated for their initial work.  Second, more broadly, BOA wants the Court to employ plenary process to decide its interests as creditor, allowing the bank to participate as a party with the aim of elevating its private interests ahead of all others in this action.  The bank seeks to enter this law enforcement action as a party, in order to redirect the action to serve its private interests.

BOA's purposes are not the purposes of this action, and BOA's claims are exactly the sort of issues the receivership process contemplates.  The bank does not meet the requirements for intervention.  It will have the opportunity to present and attempt to support its (unfounded) arguments in the course of proceedings related to the receivership, and has no right to derail this action by claiming the status of a party.

## I.     THE COURT HAS BROAD DISCRETION TO MANAGE THIS EQUITABLE LAW ENFORCEMENT ACTION IN THE PUBLIC INTEREST.

On July 21, 2014, on motion of Plaintiff the Federal Trade Commission ("FTC"), the Court entered an *Ex Parte* Temporary Restraining Order with Asset Freeze and Appointment of a Temporary Receiver.  (Doc 9) ("TRO").  The Court did so after reviewing the FTC's evidence and argument, and finding that the FTC is likely to prevail on the merits of its claims that the Defendants have engaged in pervasive deceptive acts and practices in violation of federal law.

This equitable law enforcement action is premised upon Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), by which Congress granted this Court broad equitable authority and "the full 'power to decide all relevant matters in dispute and to award complete relief[.]'" *FTC v. Ross*, 743 F.3d 886, 890 (4th Cir. 2014) (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 399 (1946)).  What constitutes "complete relief" is viewed "'in light of statutory purposes.'" *Id.* (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960)).

Where, as here, the public interest in law enforcement is involved, the Court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."  *Porter*, 328 U.S. at 398 (citing *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)).

> Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754.  It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced.  In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances.  Only in that way can equity do complete rather than truncated justice. *Camp v. Boyd*, 229 U.S. 530, 551,552, 33 S.Ct. 785, 793, 57 L.Ed. 1317.

*Porter*, 328 U.S. at 398.  "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."  *Virginian*, 300 U.S. at 552 (collecting cases).

It is in light of these statutory and equitable purposes, and in the public interest, that the Court froze the Defendants' assets and appointed the Receiver.  The Court provided the Receiver with instructions and authority, among others, to "[p]revent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants."  (Doc 9, p. 23 (section XI.G)).  The Stipulated Preliminary Injunction continues these same instructions and authority. (Doc 74, p. 20 (section XI.G)).  By these instructions, the Court has enlisted the aid of the Receiver (acting under the Court's supervision) in exercising the power noted in *Porter* to "adjust and reconcile competing claims" as may be necessary to achieve equity in the public interest.  328 U.S. at 398.

Thus, the Court's Orders have directed explicitly that the Receiver, among his other duties, will manage a process for the determination, adjustment, and protection of the interests of consumers and creditors.  This aspect of the Receiver's duties is fully consistent with *Porter*, providing a mechanism by which the Court can "adjust and reconcile competing claims" in an orderly and economical way.  328 U.S. at 398.  It promotes judicial efficiency and the statutory purpose of this action.  As discussed more fully below, BOA has provided no sound basis for the Court to abandon the contemplated process and, instead, to start adding creditors as parties.

## II.    THE COURT IS NOT REQUIRED TO PERMIT THE BANK TO INTERVENE AS OF RIGHT.

The bank's primary argument for intervention is that it is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a).  BOA acknowledges that to establish that it has such a right, it must satisfy four – and all four – requirements that (1) its motion is timely; (2) it has a direct and substantial interest in the subject of the action; (3) denial of the motion will impair its ability to protect its interest; and (4) existing parties do not adequately represent its interest.  (Doc 78-1, pp. 6-7); *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (Chasanow, J.) ("A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying *all four* requirements.") (emphasis added).   The bank has not met its burden.

### A.    In Part, the Motion Is Untimely.

While the FTC does not take the position that BOA has acted too late to seek to protect any of the bank's claimed interests as a general matter, it does perceive a substantial timeliness issue with regard to BOA's short-term goal to seek reconsideration of the approval of the Receiver's first request for compensation from receivership assets.  Since July 23, 2014, when it received the TRO, the bank has had notice of (a) this action, (b) the Receiver's appointment and the Court's substantial instructions to the Receiver, (c) the Order provision entitling the Receiver to reasonable compensation, (d) the Order provision mandating that the Receiver's compensation come solely from receivership assets, and (e) the 60-day deadline by which the Receiver would need to file his initial request for compensation.  (Doc 9, pp. 21, 28 (sections XI and XIII); Doc 78-4, ¶ 13).

Indeed, these latter three points were set apart in a separate section of the TRO prominently marked, "**COMPENSATION OF RECEIVER.**"  (Doc 9, pp. 28-29 (section XIII)).  In spite of this notice, BOA did not act to oppose the Receiver's First Interim Application for Fees & Expenses at any point from its September 22, 2014 filing to the Court's October 29, 2014 Order approving the application.

Although BOA makes repeated reference to the funds marshalled by the Receiver as the "Collateral," it actually defines that capitalized term much more broadly to include "all assets" of nearly every Defendant.  (Doc 78, p. 1; Doc 78-1, p. 1; Doc 78-3, p. 1; Doc 78-4, ¶ 3).  In effect, the bank intends to claim an exclusive priority over all receivership assets.  Given the extreme breadth of BOA's asserted interests, the bank could not have failed to take note of the TRO requirements – now Preliminary Injunction requirements – it seeks to challenge.  The bank's assertions that it received no notice regarding the Receiver's compensation and proceedings relevant thereto are not well-supported, and neither are its late efforts to undo the Court's decision to grant the Receiver's application more than 30 days after the Receiver filed it.

The bank has not shown that it would suffer any practical prejudice from the Receiver following through to accept his compensation from receivership assets.  Even assuming BOA's factual and legal assertions have merit (and, as discussed below, that would not be a sound assumption), the bank has only set forth the initial amounts of its loans and the amounts that were on deposit, but has not indicated how much it believes the Defendants still owe on its various loans.  That is to say, there is no evidence that compensation to the Receiver from receivership assets would cause the value of the receivership estate to drop below whatever the bank claims is still owed.

On the other hand, BOA's delay creates a real potential for prejudice to the public interest, given that the Receiver has continued to execute his duties under the TRO and Preliminary Injunction in the weeks (months) since BOA received notice of the elements of the Court's instructions with which it now takes issue.  There is and ought to be "no doubt under the law, and the terms of the TRO, that the Receiver is entitled to recover [his] reasonable fees and expenses for the assignment [he] took from the court."  *FTC v. Fortune Hi-Tech Mktg., Inc.*, No. 13-123-KSF, 2013 U.S. Dist. LEXIS 117475, at *8-*9 (E.D. Ky. Aug. 20, 2013).  To hold otherwise and effectively deny the Receiver any compensation because of the bank's broad and meagerly-supported claims – particularly only after the Receiver has spent considerable time and resources – could not only wrongly paralyze and penalize this Receiver, but also act as a deterrent to any potential receiver candidate in a law enforcement case in this District.  With respect to its goal of blocking the Receiver's compensation, BOA has not established that its motion to intervene is timely.  In this respect, therefore, the motion fails based on untimeliness alone.

**B.      The Bank's Economic Interests Do Not Warrant Intervention in this Law Enforcement Action.**

The subject matter of this action is Defendants' deceptive practices against consumers. While the bank is claiming an interest in property that is involved in the action, it has not specifically articulated its direct and substantial interest in the subject of the action itself – Defendants' conduct.

Rule 24(a)(2) does refer to an interest in property, but it specifies that the property in which an interest is claimed must be "the subject of the action."  In suggesting that it has satisfied this requirement, the bank cites inapposite cases wherein the property interest was

indeed the subject matter of the underlying litigation.  For instance, the Bank cites to *Hardy-Latham v. Wellons,* 415 F.2d 674 (4th Cir. 1968) in which the court allowed intervention into a contract suit by a broker to recover her commission where the intervenor claimed a finder's fee of one half of the commission at issue in the suit.  Similarly distinguishable is *Day v. DB Capital Grp.*, No. DKC 10-1658, 2011 U.S. Dist. LEXIS 25303, at *72-*75 (D. Md. Mar. 11, 2011) (Chasanow, J.) relied on by BOA.  In *Day*, the court granted a consent motion allowing a bank to intervene because the plaintiff's complaint included a cause of action to quiet title on property the bank claimed it owned.

No similar situation is presented by the underlying litigation; all of the causes of action in the FTC's Complaint are focused on the Defendants' conduct. The bank's alleged interest in the case is a mere economic interest in the outcome of the litigation, which is insufficient to support a motion to intervene.  *Flying J, Inc. v. Van Hollen*, 578 F.3d  569, 571 (7th Cir. 2009) (explaining that "the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit – maybe you're a creditor of one of them – does not entitle you to intervene in their suit"); *SEC v. Falor*, 270 F.R.D. 372, 376-77 (N.D. Ill. 2010) (collecting cases); *see also White v. United States*, No. 03-1823, 2006 U.S. Dist. LEXIS 41249, at *8-*9 (D. Ariz. June 19, 2006) ("There is simply no right to intervene based on the fact that the outcome of a case may increase or decrease the collectability of a third-party's claim against a party.")

The Ninth Circuit succinctly articulated the rationale for this rule:

> A mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself.  To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself. . . . [It] would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded.

7

*United States v. Alisal Water Corp.*, 370 F.3d 915, 920 & n.3 (9th Cir. 2004) (affirming denial of intervention where intervenor's interest in the prospective collectability of the debt secured by defendant's property was not sufficiently related to the environmental enforcement action brought by the United States).

Here, BOA's interest in the present action is in the prospective collectability of a debt. As in *Alisal Water Corp.*, this interest is "several degrees removed" from the overriding consumer protection policies that are the "backbone" of this litigation, and the motion to intervene should be denied.  370 F.3d at 920.

### C.        The Bank Can Participate as a Creditor in the Receivership Process.

The heart of the bank's argument is on the third factor, that denial of its motion to intervene would impair or impede its ability to protect its interest.  But it is on this very same factor where the bank's argument is weakest.  By specifically contemplating in the TRO and Preliminary Injunction that the Receiver will assist the Court to "determine, adjust, and protect the interests of consumers and creditors," the Court has already acknowledged that the bank may have interests, and has provided the bank a meaningful mechanism by which to assert them.

Law enforcement receivership caselaw establishes that the Court and Receiver may employ summary proceedings to provide nonparties the opportunity to present their cases for entitlement to frozen funds.  *See, e.g., SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992). The use of summary proceedings allows nonparties to be heard in an efficient and economical way.  *Id.* at 1566 ("The government's and parties' interests in judicial efficiency underlie the use of a single receivership proceeding. . . . A summary proceeding reduces the time necessary to

settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets.").

Courts have denied intervention as of right where summary proceedings, used by the receiver and reviewed by the district court, offered adequate process to interested nonparties. *See, e.g., CFTC v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386-87 (7th Cir. 1984) (affirming denial of intervention of an investor in a CFTC enforcement action asserting a claim of superior right to defendants' assets where investor may assert the claim in the claims procedure established by the receiver); *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586-87 (10th Cir. 1984) (affirming denial of intervention of creditor claiming priority in favor of the claims procedure established by the receiver and supervised by the court).  Interested nonparties may participate without intervening not only before the receiver, and not only before the district court, but even before the relevant court of appeals.  *See, e.g., SEC v. Enter. Trust Co.*, 559 F.3d 649, 651-52 (7th Cir. 2009) (holding that nonparty creditors could appeal, without intervention, district court's acceptance of receiver's proposed plan of distribution; collecting similar authority).

Simply put, BOA will be able to protect its interests without party status.  The bank has had the opportunity, by this very motion, to present to the Court the scope of and basis for its claims.  After the Court decides the motion, the bank's interests in maximizing the value of the receivership estate, and in preventing consumers from recovering from it, will be no different from the Defendants' interests in the same goals.  If and when the Court finds the Defendants liable, or otherwise orders distribution of the assets of the receivership estate in equity, the bank will have a full and fair opportunity to participate in the process by which the Court will "adjust

and reconcile competing claims." *Porter*, 328 U.S. at 398; (Doc 74, p. 20 (section XI.G)). At no point will the bank's interests have been unprotected.[1]

### D. To the Extent the Bank's Fundamental Interest Is in a Determination that the Defendants Acted Lawfully, the Defendants Represent that Interest.

The fourth element that BOA must establish to gain party status by intervention as of right is that no existing party represents its interest. As discussed below, BOA has provided very little in the way of argument or citations on the merits of its claim to a first priority secured interest in all of the frozen assets. As noted in discussion of the second factor above, BOA's claims do not go to the subject matter of this action, which is Defendants' conduct. It is possible, as noted in the discussion of the third factor above, that the bank actually intends to assert as a foundation argument that its interest in the frozen assets is valid, and consumers should take nothing, because the Defendants' business practices were lawful. While this might arguably address the second factor, it would on its face fail the fourth. The existing Defendants represent an identical interest.

## III. THE BANK'S CLAIM DOES NOT WARRANT PERMISSIVE INTERVENTION.

As an alternative to intervention as of right, BOA seeks permissive intervention pursuant to Rule 24(b). To intervene under this Rule, the bank must establish the following four factors:

---

[1] The commentary to the 1966 Amendment to Rule 24 states, "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." In the event that the Court determines to grant BOA's motion to intervene, the FTC respectfully requests that the Court restrict that intervention to issues pertaining to the claims process, should the Court order distribution of frozen assets. There is no need to accept the bank's complaint for a declaratory judgment, or otherwise to invoke the many requirements of plenary civil proceedings, merely to address the bank's claimed property interest.

(1) its application is timely, (2) its claim shares common questions of law or fact with the main

action; (3) it has grounds to assert subject matter jurisdiction; and (4) its intervention would not

cause undue delay or prejudice to the adjudication of the parties' rights.  *Harrison v. Fireman's*

*Fund Ins. Co.,* No. 11-1258, 2011 U.S. Dist. LEXIS 82867, at *12 (D. Md. July 28, 2011)

(Hollander, J.) (citing *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D.

Md. 2004) (collecting cases)).  A district court's decision whether to grant an application for

permissive intervention is a matter of discretion.  *Sutphen Estates, Inc. v. United States*, 342 U.S.

19, 23 (1951).

The Court should deny the bank's application for permissive intervention.  Most

importantly, in comparison to the efficient process contemplated in the terms of the TRO and

Preliminary Injunction instructing the Receiver to "determine, adjust, and protect the rights of

consumers and creditors," intervention would cause undue delay and prejudice to the timely

adjudication of the original action by delaying the current proceedings with plenary attention to

collateral issues.  *See, e.g., Rollins Cablevue, Inc. v. Saienni Enters.*, 115 F.R.D. 484, 488-89

(D. De. 1986) (addition of legal and factual issues to litigation would delay adjudication of rights

of original parties).

As to the issue of common question of law or fact, we have already noted that the bank's

interest is not in the core subject matter of the action – Defendant's conduct – but in its own

claimed rights to property.  This ancillary question may and ought to be determined through

appropriate and efficient ancillary processes already contemplated in the Preliminary Injunction.

A mere "coincidence of financial interest does not satisfy the standard for permissive

intervention."  *FTC v. First Capital Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 366

(W.D.N.Y. 2001) (internal quotation marks omitted) (denying application for permissive intervention due to collateral issues raised by applicant, including that applicant creditor sought legal relief on the basis of an agreement and promissory note with defendant).

Furthermore, as discussed above, with respect to BOA's efforts to block the Receiver from compensation already ordered, the bank's motion is untimely.  As BOA concedes in its brief, courts enforce the timeliness factor even more strictly in the permissive intervention analysis than in the intervention as of right analysis.  (Doc 78-1, p. 7, citing *Brink v. Da Lesio*, 667 F.2d 420, 428 (4th Cir. 1981)).

Finally, a point that might seem minor is actually quite telling.  Despite being well aware of the factors it needed to meet, BOA has not alleged in its proffered Complaint any grounds for subject matter jurisdiction over its claims.  In its proffered Complaint, the bank asserts that, "This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b)."  (Doc 78-4, ¶ 4).  This is a ***word-for-word copy*** of the FTC's jurisdiction allegation, including citation to the FTC Act and the Telemarketing Act.  None of these statutory provisions grant jurisdiction over an action to establish a bank's interest in property.  This is not a mere error in drafting; it is much more than that.  It is a stark illustration of what is actually going on here:  a private party is seeking to take a statutorily authorized federal law enforcement action and redirect it to advance its own private interests.

A ruling by this Court granting BOA's motion to intervene might well invite havoc in future consumer protection enforcement actions. Were creditors affected by temporary restraining orders and preliminary injunctions requested by the FTC authorized to intervene and

obtain party status in FTC enforcement actions, straightforward law enforcement actions would turn into jumbled proceedings with multiple additional parties.  *See*, *e.g.*, *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) (permissive private party intervention would make SEC securities case more "confused and complex").  It seems nearly certain that BOA, a large bank that does business nationwide, would take this Court's ruling into any district court in which the FTC were to file suit against anyone who might owe BOA money.  Other financial institutions might well notice such precedent, and similarly seek to use it to undermine the efficient pursuit and administration of equitable law enforcement cases.

## IV.   THE RECEIVER'S WORK AND SUMMARY PROCEEDINGS WILL PROVIDE DUE PROCESS.

Denying BOA's motion will not deny the bank due process.  As discussed above, when a court appoints a receiver in an equitable law enforcement proceeding, nonparties claiming an interest may participate without intervening.  Moreover, nonparties dissatisfied with the actions of an equity receiver may present their arguments to the appointing court without being elevated to the status of parties to the action.

Substantial considerations of judicial economy in equitable law enforcement receiverships support the use of procedures more efficient than full-fledged intervention and plenary process.  As long as due process is satisfied, which requires notice and an opportunity to be heard, the Court has the power to order the bank's claims resolved by a summary proceeding ancillary to the underlying action.  *Elliott,* 953 F.2d at 1566-67.  Summary proceedings are sufficient so long as the bank has "fair notice and a reasonable opportunity to respond."  *SEC v. Hardy*, 803 F.2d 1034, 1040 (9th Cir. 1986).

Nothing forecloses BOA from the opportunity to participate going forward.  Assuming the bank intends to support its claimed interests in frozen funds with some level of specificity in fact and law, it can argue them to the Receiver and to the Court during any claims process. Intervening party status is not required for the bank to participate and be heard as a creditor in this fashion going forward.

## V.       THE BANK HAS NOT SUPPORTED ITS POSITION ON THE MERITS.

Finally, but not least, the Court will be justified in declining BOA's request to repurpose this action because the bank has not demonstrated any merit to its broad claim that it must be granted first priority to take the frozen assets.  Ordinarily, a court need not take a detailed look at the merits when deciding a motion to intervene.  This matter is unusual, though, in that the bank intends to have an immediate and immense impact through intervention by seeking to modify the Preliminary Injunction to deny the Receiver any access to receivership assets.  Two principles found in precedent within and outside this District provide substantial basis to doubt that BOA's claims that it may preclude all others from access to frozen assets will survive scrutiny.

First, in equity, "any proceeds of wrongdoing may be properly ordered held in trust for the victims of the wrongdoing."  *FTC v. Ameridebt, Inc.,* 373 F. Supp. 2d 558, 565 (D. Md. 2005) (Messite, J.).  Not even an IRS lien will attach to proceeds "wrongfully obtained from consumers."  *Id*. (citing *FTC v.Crittenden*, 823 F. Supp. 699, 703 (C.D. Cal. 1993), *aff'd*, 1994 U.S. App. LEXIS 3910 (9th Cir. Feb. 25, 1994)).  The FTC sought an asset freeze against these Defendants to preserve the possibility of redressing consumer injury through equitable monetary relief.  It is and has been the FTC's position that these Defendants had no right to take consumers' money using the deceptive and unlawful tactics the FTC has alleged and

demonstrated in evidentiary submissions to the Court.  The Defendants, having had no right to

the proceeds of their conduct, had no ability to grant special interests in those proceeds to any

third party.

      Second, in equitable law enforcement actions courts often order that the interests of

creditors, including secured creditors, will be subordinate to those of victims.  *CFTC v. RFF GP,*

*LLC*, No. 4:13-cv-382, 2014 U.S. Dist. LEXIS 13968, at *5-*8 (E.D. Tex. Feb. 4, 2014) (citing

*Quilling v. Trade Partners, Inc.*, No. 1:03-cv-0236, 2006 U.S. Dist. LEXIS 99730, at *7 (W.D.

Mich. Nov. 17, 2006)), *adopted at* 2014 U.S. Dist. LEXIS 30201 (E.D. Tex. Mar. 10, 2014).  In

*RFF GP*, a receiver recommended that receivership funds be used to pay victims of a fraudulent

scheme ahead of other creditors, including a bank that asserted a secured claim.  The bank

objected, claiming that after the victims were paid there would be nothing left to pay the bank as

secured creditor.  Despite the bank's objection, the court held the receiver's plan of prioritization

to be equitable.

      In connection with its motion to intervene and its motion for a dramatic modification to

the Preliminary Injunction, BOA has submitted to the Court nothing specific to show that its all-

encompassing claim has merit.  Though the bank identifies several loans and claims that all of

the frozen assets are collateral for them, it does not cite any specific provisions of any documents

demonstrating its claim.  Similarly, though the bank makes a general reference to Article 9 of the

UCC, it provides no analysis showing how its claims have effect under specific provisions of

Article 9 as enacted by any state.  Its legal analysis is lacking also in that it offers no argument or

citation to show that federal law requires the Court to honor the bank's claimed interests above

all others in the context of an equitable law enforcement action.

BOA has offered no grounds, other than its own bare assertions, for modification of the Preliminary Injunction.  The Court may deny the bank's motion to intervene, and maintain the Preliminary Injunction intact, without prejudice to BOA's future participation in any claims process as a nonparty creditor.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny BOA's Motion to Intervene.  The Court may permit BOA to participate and be heard in its role as a nonparty creditor in any claims process, to the extent and in the manner the Court finds warranted and consistent with due process.  The Court need not and should not grant the bank party status.  Similarly, Plaintiff respectfully requests that the Court reject BOA's proffered Motion to Modify the Preliminary Injunction, permitting the bank to participate and assert its claims and objections going forward under the existing Order.

Respectfully submitted,

Dated: November 20, 2014

/s/Harris A. Senturia
HARRIS A. SENTURIA (Ohio Bar #0062480)
MARCI FREDRICK (Ohio Bar #0087299)
AMY C. HOCEVAR (Ohio Bar #0075510)
Federal Trade Commission
1111 Superior Ave., Suite 200
Cleveland, Ohio 44114
Senturia Phone: (216) 263-3420
Fredrick Phone: (216) 263-3414
Hocevar Phone: (216) 263-3409
Fax: (216) 263-3426
hsenturia@ftc.gov
mfredrick@ftc.gov
ahocevar@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 20, 2014, the foregoing Plaintiff's Memorandum in Opposition to Bank of America's Motion to Intervene was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties and others indicated on the electronic filing receipt (including nonparty Bank of America, N.A.) who may access this filing through the Court's system.

*/s/Harris A. Senturia*
Attorney for Plaintiff
