# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMM'N, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-14-2312 |
| MIDWAY INDUS. LTD. LIAB. CO. *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM AND ORDER

Pending before the Court is the Receiver's motion for approval of the proposed distribution plan for assets of the Receivership Estate, as modified and supplemented by the Receiver's filing of September 20, 2018. (ECF Nos. 328, 329.) Also before the Court is an objection by Donna Seuss Tarantino to the proposed distribution. (ECF No. 330.) The Court finds no merit in Ms. Tarantino's objection. However, the Court has questions as to whether to accept the proposed distribution otherwise as an appropriate, finely-tuned exercise of the Court's equitable power. The Court finds it necessary to hold an in-court hearing on these questions.

Plaintiff, the Federal Trade Commission ("FTC"), sued a host of entities and several individuals for fraud in relation to a telemarketing scheme. A receivership was created for, *inter alia*, collection of assets to provide compensation to those who were victims of the scheme. (TRO, ECF No. 9; Prelim. Inj., ECF No. 74.) In both of the early injunctive orders, the Court directed the Receiver to "[p]revent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants." (TRO 23; Prelim. Inj. 20.) The Court's final order and judgment in

favor of the FTC and against the Entity Defendants continued the receivership and entered judgment in the amount of $58,137,415 in favor of the FTC as equitable monetary relief. (Final Order 6, ECF No. 229.) Further, the Final Order specified, "All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund." (*Id.* 7.)

After disposing of various secured claims, the Receiver indicates the only remaining claimants are unsecured, whether they be consumers or creditors. (Supp. to Mot. Approval 1, ECF No. 329-4.) The Receiver indicates that its two guiding principles in the formulation of the distribution plan were the following:

- Those who participated in or in some way took money out of the scheme ought not to be treated on par with the consumer victims; and

- No unsecured creditor's claim should be placed ahead of compensation to consumer victims, pro rata.

(*Id.* 8.) The Receiver proposes a distribution plan involving two classes of claimants:

**First Priority Claimants:**
Comptroller of the State of Maryland (to be determined)
Consumer victims ($58,287,849)
Konica Minolta ($1,000)

**Second Priority Claimants:**
Former employees of any Received Entity (approximately $232,000)
Del Vel Chem Co. ($63,829)
Fedder & Garten P.A. pre-receivership invoices (to be determined)

(*Id.* 2.) Anticipating a total distribution of approximately $11 million, the Receiver proposes a distribution pro rata to the First Priority Claimants, with nothing going to the Second Priority Claimants. (*Id.*)

2

In reference to the second guiding principle, the Receiver's proposed distribution not only does not place any unsecured creditor's claim ahead of compensation to consumer victims, but it goes further by cutting unsecured creditors out entirely. Yet, the mandate to the receiver was to "[p]revent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants." The Receiver was not given a mandate to protect the interests of consumers and ignore the interests of creditors. Certainly, consumer redress was encompassed within the equitable relief ordered in the Final Order, but not to the exclusion of redress for creditors. That the Receiver has misconstrued the Court's orders is evident when he states, "The Court has entered judgment in favor of *consumers* in the amount of $58,287,849." (*Id.* 12 (emphasis added).) The Final Order, however, was neutrally worded, entering judgment in favor of the *Commission*, not consumers.

Further, with reference to the first guiding principle, the Receiver's motion is noticeably deficient in evidentiary support for the notion that *all* of the Second Priority Claimants participated in the fraud or profited from it. The Receiver makes no distinction between Second Priority Claimants with knowledge of the fraudulent scheme and those without such knowledge. Although some may have had knowledge, and although some must be held to have had knowledge based upon the questionable marketing call scripts, the Receiver paints everyone with the same broad brush and assigns complicity to all Second Priority Claimants, including vendors of goods and legal services.

At the hearing, the Receiver must respond to the Court's concern whether the Receiver has properly assessed the merits of every individual's or entity's claim to determine whether each should be denied compensation altogether or assigned a pro rata percentage different from

or the same as others. The hearing shall be held on **December 5, 2018,** at **2:30 p.m.**, in Courtroom 3D, United States Courthouse, 101 West Lombard Street, Baltimore, Maryland.

DATED this __14__ day of November, 2018.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge